UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL E. NAGY, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CEP AMERICA, LLC, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-05648-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I. INTRODUCTION

In this putative Employee Retirement Income Security Act ("ERISA") class action, Plaintiffs Daniel E. Nagy and Maria Romero bring causes of action averring various breaches of fiduciary duties and prohibited transactions against Defendants CEP America, LLC (d/b/a "Vituity") and the MedAmerica Retirement & Benefits Committee (the "Committee").[1] Plaintiffs are participants in Vituity's 401(k) Profit Sharing Plan (the "Plan"), which used Schwab Retirement Plan Services and its affiliates (collectively, "Schwab") as its recordkeeper. Defendants move to dismiss the complaint pursuant to Rule 12(b)(1) on the grounds Plaintiff Nagy lacks Article III standing and Rule 12(b)(6) on the grounds Plaintiffs fail to state a claim for each of their causes of action. For the following reasons, Defendants' motion is granted in part and denied in part.

---

[1] The complaint also names as Defendants Jane and John Does 1 through 25, individual members of the Committee during the proposed class period.

## II. BACKGROUND[2]

The Plan is a defined contribution retirement plan for Vituity employees for which Vituity serves as plan administrator.[3] In this role, Vituity is responsible for investing, managing, and controlling Plan assets. Defendants selected Schwab to serve as the Plan's recordkeeper and perform corresponding services such as "maintain[ing] participant account balances" and "provid[ing] a website and telephone number for Plan Participants to monitor and control their Plan accounts." Dkt. 1 ("Compl.") ¶ 37. Though Schwab provided various services to the Plan in its capacity as recordkeeper, Vituity also provided the Plan with (and charged for) administrative services.

At a high level, Plaintiffs' causes of action can be divided into (1) those relating to Schwab investments and (2) those relating to administrative fees paid to Vituity.[4] In the first bucket of claims, Plaintiffs aver Defendants breached their fiduciary duties by causing the Plan to pay Schwab excessive fees of more than $250 per participant per year for the services it provided and also by selecting an unreasonably low-yield savings account offered by Schwab (the "Savings Account") as the Plan's capital preservation option. Plaintiffs argue the Plan's large size (6,232 participants at the end of 2023) meant Defendants should have been able to, but did not, leverage economies of scale to minimize costs. Instead, Plaintiffs claim Schwab charged the Plan fees many times higher than the average fees paid to recordkeepers by similarly sized plans, despite Schwab providing "only standard services typical of other recordkeepers." *Id.* ¶ 100. Defendants accepted these high fees, Plaintiffs argue, because they were borne by Plan Participants and because Defendants *also* used Schwab to administer the MedAmerica Retirement Plan for CEP Physicians

---

[2] The factual background of this case is based on the well-pled allegations in the complaint, which are taken as true for the purposes of this motion.

[3] Vituity delegated some of its responsibilities as plan administrator to the Committee and its members.

[4] Plaintiffs clarified at oral argument that they do *not* aver a freestanding cause of action for breach of the duty of loyalty. This order accepts that representation. For clarity of the record, there is no live breach of the duty of loyalty cause of action in this case.

(the "Pension Plan"), which charged no fees. The Plan, in other words, was subsidizing the Pension Plan for Vituity's benefit. Plaintiffs estimate Defendants' decisions allowed Schwab to collect millions of dollars in excessive fees and other compensation.[5] Further, Plaintiffs argue that every time the Plan and Plan participants deposited money in the Savings Account, they "lent money to Schwab" and engaged in prohibited transactions under ERISA. *Id.* ¶ 164; *see* 29 U.S.C. § 1106(a)(1)(B).

In the second bucket of claims, Plaintiffs aver Defendants breached their fiduciary duty of prudence and engaged in prohibited transactions with respect to the administrative fees Vituity charged the Plan. Vituity collected fees ranging from $236 to $411 per participant per year from the Plan for administrative services it provided. Plaintiffs allege these direct fees constituted unreasonable administrative expenses when compared with comparable 401(k) plans. All told, the Plan paid, per participant, more than $600 in administrative fees per year to Schwab and Vituity. Plaintiffs also aver Defendants engaged in prohibited transactions, such as collecting fees from the Plan and selecting the Savings Account default capital preservation option for Plan assets. Plaintiffs claim Defendants chose the Savings Account in order to benefit Schwab so that Schwab would not charge a *separate* Vituity pension plan for its services.

### III. LEGAL STANDARD

Article III of the United States Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A Rule 12(b)(1) motion to dismiss a complaint challenges the court's subject matter

---

[5] Plaintiffs allege Schwab received payments from the Plan or otherwise profited from its involvement with the Plan through at least five pathways:
1. Direct disbursement from the Plan;
2. Revenue-sharing payments from Plan investments;
3. Fees charged by proprietary Schwab-managed ETFs to investors;
4. Use of assets invested in the Savings Account;
5. Other compensation sources, such as float interest and marketing access to Plan participants.

jurisdiction over asserted claims. It is the plaintiff's burden to prove jurisdiction at the time the action is commenced. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A complaint must also contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

## IV. DISCUSSION

### A. Standing

Defendants first argue Plaintiff Nagy lacks Article III standing to assert his claims because he signed a separation agreement, upon ending his employment with Vituity, releasing his ability to bring any violation or claim under ERISA against Vituity. "[T]he irreducible constitutional minimum of standing" requires, as relevant here, a showing of a concrete and particularized injury that is actual or imminent. *Lujan*, 504 U.S. at 560. Putative class representatives must demonstrate "they personally have been injured, not that injury has been suffered by other, unidentified

1  members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). A plaintiff's release of

2  individual claims does not constitute a release of representative claims brought pursuant to ERISA

3  § 502(a)(2). *Bowles v. Reade*, 198 F.3d 752, 759–60 (9th Cir. 1999).

4        Plaintiffs point to *Bowles* as Ninth Circuit authority squarely contrary to Defendants'

5  standing argument. Defendants acknowledge *Bowles* (albeit not until their reply brief) but argue

6  that case has since been effectively overruled by two Supreme Court decisions: *LaRue v. DeWolff,*

7  *Boberg & Associates*, 552 U.S. 248, 256 (2008), and *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544

8  (2020). *LaRue*, however, held plaintiffs *may* bring individual claims pursuant to § 502(a)(2), not

9  that they are *required* to do so. *Fernandez v. Franklin Resources, Inc.*, No. 17-cv-6409, 2018 WL

10  1697089, at *4 (N.D. Cal. Apr. 6, 2018). *Thole* reaffirmed the need to show injury-in-fact to

11  establish standing, *see* 590 U.S. at 544, but *Bowles* makes clear the § 502(a)(2) remedy is a "return

12  to The Plans and *all* participants of all losses incurred," 198 F.3d at 760 (emphasis added). In

13  other words, Plaintiff Nagy retained his right to recover, like any other Plan participant, should a

14  § 502(a)(2) claim brought on behalf of the Plan succeed. *LaRue* and *Thole* provide no basis to

15  depart from *Bowles*' holding that a plaintiff does not release § 502(a)(2) claims brought on behalf

16  of a plan by signing an individual release. Defendants cite to no Ninth Circuit authority for the

17  proposition *Bowles* is no longer good law where a plaintiff seeks to bring representative claims on

18  behalf of a plan. Plaintiff Nagy has standing to bring this action.

19      **B. Breach of Duty of Prudence**

20        Next, Defendants move to dismiss Plaintiffs' breach of the duty of prudence claims

21  relating to Vituity's decision to select the Savings Account as the Plan's capital preservation

22  option (Count I) and to allow Vituity (Count III) and Schwab (Count V) to charge Plan

23  participants excessive administrative fees. Fiduciaries are obligated to:

> discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

1    29 U.S.C. § 1104(a)(1)(B). The relevant inquiry for a breach of duty of prudence claim is whether
2    a fiduciary, "at the time they engaged in the challenged transactions, employed the appropriate
3    methods to investigate the merits of the investment and to structure the investment." *Donovan v.*
4    *Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983). A party must make sufficient "circumstantial
5    factual allegations" to permit a reasonable inference "from what is alleged that the process was
6    flawed." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan*
7    *Stanley Inv. Mgmt. Inc*, 712 F.3d 705, 718 (2nd Cir. 2013) (citation omitted). Fiduciaries must
8    continue to "monitor trust investments and remove imprudent ones" and "incur only costs that are
9    reasonable" in addition to exercising prudence when investment decisions are made in the first
10   instance. *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (citation omitted).

### 1. Excessive administrative fees

Defendants argue Plaintiffs failed to "plead any facts regarding the actual process Vituity used" relating to choosing investment vehicles or evaluating administrative fees charged to Plan participants. Dkt. 23, at 9. They cite *White v. Chevron Corp.* for the proposition that plan fiduciaries need not choose the cheapest investment funds available but may instead reasonably pick funds that, while carrying higher fees, are attractive for other reasons. *See* No. 16-cv-793, 2016 WL 4502808, at *10 (N.D. Cal. Aug. 29, 2016) ("*White I*"). Defendants argue Plaintiffs have not pled facts sufficient to raise a plausible inference that Defendants' process for selecting investment options was flawed.

Courts have taken slightly different approaches at the motion to dismiss stage to evaluating the viability of causes of action averring excessive recordkeeping and administrative fees. *Compare In re Sutter Health ERISA Litig.*, No. 20-cv-1007, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (finding allegation of specific facts supporting claims of excessive fees sufficient), *with Wehner v. Genentech, Inc.*, No. 20-cv-6894, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (holding "a plaintiff must plead administrative fees that are excessive in relation to the *specific* services the recordkeeper provided to the *specific* plan at issue"). In *White I*, the court (applying the latter approach) dismissed breach of duty of prudence claims in part because the plaintiffs did

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 23-cv-05648-RS
6

not "allege any facts from which one could infer that the same services were available for less on the market." 2016 WL 4502808, at *14. These approaches are perhaps most clearly distinguished by the extent of the burden they place, respectively, on plaintiffs to plead that fees were excessive.

### i. *Fees paid to Schwab*

With respect to fees Schwab charged for the recordkeeping services it provided, Plaintiffs allege the Plan paid recordkeeping fees ranging from approximately $250 to $450 per participant per year to Schwab alone. Compl. ¶ 51. The complaint alleges Schwab offered "standard services typical of other recordkeepers" despite receiving these higher fees, *id.* ¶ 100, and that Vituity *also* provided (and charged for) services to the Plan that were, in theory, not provided by Schwab, demonstrating that the scope of services Schwab offered the Plan was limited, *id.* ¶¶ 111–125. Schwab provided "Trustee services" as well as the "offering of a brokerage window." *Id.* ¶ 100. To contextualize the fees paid to Schwab, Plaintiffs point to data evaluated by a defense expert in another case about recordkeeping fees for nine plans with between 2,500 and 15,000 participants where "the range of fees was $48.00 to $86.15" in 2017. *Id.* ¶ 99. Defendants do not contest that the fees paid in these nine comparator cases were for recordkeeping services alone. Plaintiffs also point to a 2021 New England Pension Consulting survey finding a benchmark fee of $50 per participant for recordkeeping services for plans of similar sizes to the Plan here.

Plaintiffs have done enough to support a plausible inference that Defendants breached their duty of prudence by paying excessive administrative fees to Schwab. Defendants argue Plaintiffs' proffered comparator plans are unhelpful because the "allegations about the Plan's fees refer to payment to two parties for *two different types of services* (recordkeeping and general administration)." Dkt. 23, at 12 (emphasis in original); *see also Wehner*, 2021 WL 507599, at *6 (finding failure to provide adequate market comparator). Plaintiffs, however, explicitly allege that the fees the Plan paid Schwab simply for ordinary recordkeeping services (see Compl. ¶ 100) dwarfed those paid to recordkeepers across a range of comparable plans.[6] *See Johnson v. Fujitsu*

---

[6] Defendants contend Plaintiffs actually allege Schwab provided "additional *administrative* services" to the Plan (unlike the comparator plans) such that Plaintiffs' comparisons are useless.

*Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 467 (N.D. Cal. 2017) (finding claimed breaches of duties of prudence and loyalty plausible where "recordkeeping expenses were five to ten times higher than average for similarly-sized plans with over $1 billion in assets"). The comparator plans to which Plaintiffs point spanned a range of sizes—from somewhat smaller than the Plan here to somewhat larger—where the recordkeeping fees charged were multiples less than those charged here. That Plaintiffs also aver Vituity charged the Plan additional fees each year does not preclude comparing fees Schwab charged the Plan for recordkeeping and the fees charged by other recordkeepers for their recordkeeping services. Plaintiffs need not provide even more granular, micro-level "apples to apples" comparisons, based on data to which they may not yet have access, in order to survive a motion to dismiss. Defendants' motion to dismiss Count V is denied.

### ii.   *Fees paid to Vituity*

Plaintiffs also aver Defendants breached their duty of prudence with respect to the fees the Plan paid Vituity for administrative services. In comparison with the complaint's allegations concerning administrative services provided by Schwab, Plaintiffs are less specific in alleging what administrative services Vituity provided the Plan. *See* Dkt. 34, at 8 (contending fees Vituity charged were "presumably for purported administrative services not provided by Schwab"). Plaintiffs note the Plan compensated Vituity for the salaries and expenses of employees who provided administrative services for the Plan and that, all told, the Plan paid Vituity approximately $236 to $411 per participant per year in administrative fees.

Plaintiffs do not plead sufficient facts to raise a plausible inference that the fees Vituity charged were excessive—or, for that matter, that there was anything out of the ordinary in Vituity providing administrative services to the Plan.[7] Plaintiffs' acknowledgement that they do not know what types of administrative services Vituity provided the Plan stands in stark contrast to their

---

*See* Dkt. 23, at 2. Plaintiffs, however, allege Schwab provided only "standard services typical of other recordkeepers." Compl. ¶ 100.

[7] The fact Vituity was being paid for services it provided does not, without more, make it plausible that the fees it collected were excessive.

claims regarding how Schwab provided the same basket (or potentially even a smaller basket) of recordkeeping services relative to the comparator plans. Moreover, Plaintiffs offer no point of reference for whether Vituity's fees were excessive, but instead merely claim Vituity provided unspecified administrative services for too much in fees. Neither party disputes an entity in Vituity's position could conceivably provide reasonably priced administrative services to a retirement plan without running afoul of its fiduciary duties. It follows that there must be some non-speculative basis for determining whether such administrative services were excessive. Plaintiffs have not supplied such a basis here. Count III will be dismissed for failure to state a claim with leave to amend.

### 2. Savings Account investment

Defendants also move to dismiss Count I, which avers Defendants breached their duty of prudence by causing the Plan and Plan participants to invest more than $50,000,000 in the Savings Account (the Plan's capital preservation account). Plaintiffs claim Defendants' choice of the Savings Account was an imprudent one because of its predictably low rate of returns and suggest Defendants should have chosen either or both of Schwab's alternative capital preservation options: a money-market fund or a stable value fund. Defendants do not contest the Savings Account produced lower returns, but argue this cause of action fails because, unlike the Savings Account, "Plaintiffs' preferred alternatives . . . are not FDIC-insured accounts," and because a fund's poor performance does not raise an inference of imprudence. Dkt. 23, at 15.

An analysis of whether a fiduciary violated the duty of prudence depends on a "fiduciary's conduct in arriving at an investment decision, not on its results." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1069 (N.D. Cal. 2017) (citation omitted). A fiduciary has a "continuing duty to monitor . . . investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 525, 529 (2015). Fiduciaries are not required to select the highest-performing fund in order to satisfy their duty of prudence. *See Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020); *see also Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) ("A retirement plan acts wisely, not imprudently, when it offers distinct funds to deal with different objectives for different

investors.").

The parties agree higher-performing alternatives to the Savings Account existed but disagree about the significance of the fact, to a breach of prudence analysis, that the Savings Account was FDIC-insured. Plaintiffs argue "Defendants were obligated to ensure the Savings Account paid a reasonable rate of interest," Dkt. 34, at 17, but determining what constitutes a reasonable rate of interest depends on the goals of a particular investment decision. That a money market fund may offer a lower rate of return compared to, say, a stable value fund does not in itself raise a plausible inference of imprudence given the different risks each type of fund poses. *See White v. Chevron Corp.*, No. 16-cv-793, 2017 WL 2352137, at *11 (N.D. Cal. May 31, 2017) ("*White II*") (noting "stable value funds take greater risks than money market funds" and that a plan need only offer "some type of low-risk capital preservation option"). Plaintiffs' cited cases for the proposition that their underperformance allegations are sufficient do not demand a different result. In *Terraza*, for instance, the court found plaintiff pled sufficient facts that the plan's recordkeeper, J.P. Morgan, exerted significant influence over the defendants' decision-making process to support a claim that the defendants improperly selected underperforming investment options. *See* 241 F. Supp. 3d at 1076–77. Here, Plaintiffs do not support a similar plausible inference of improper influence by Schwab; rather, the facts pled suggest Defendants could have picked any of the three available capital preservation options.

Plaintiffs also contend the fact the Savings Account was FDIC-insured meant little because the Plan was protected by a fidelity bond and Securities Investors Protection Corporation coverage, as well as because the "government protects the value of US Government Money Market Funds similarly to the level of protection offered by the FDIC." Dkt. 34, at 17. Therefore, Plaintiffs suggest, FDIC insurance could not justify an investment decision offering such low returns. These conclusory statements do not establish a plausible basis to conclude Defendants' selection of the FDIC-insured capital preservation option was imprudent. Plaintiffs do not plead facts explaining how the FDIC coverage available for the Savings Account was no better than other protections available for Plan assets or mutual fund investments. *See Anderson v. Intel Corp.*

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 23-cv-05648-RS

10

*Inv. Pol. Comm.*, 579 F. Supp. 3d 1133, 1147–48 (N.D. Cal. 2022) (plaintiff arguing fiduciary should have selected different fund had to provide "meaningful benchmark" against which chosen fund could be compared). Indeed, Plaintiffs plead FDIC insurance had "little or no real value" to the Plan, Compl. ¶ 162, a conclusory statement that appears at least partially to acknowledge that the Savings Account may have been a safer investment choice under some market conditions. Pointing to the mere *possibility* that FDIC insurance did not offer more protection for the Savings Account compared to the other plans—rather than pleading facts that support this theory—is insufficient for Plaintiffs to meet their pleading burden for this claim.[8]

Finally, Plaintiffs suggest Defendants chose the Savings Account to benefit Schwab and, in turn, themselves, and that this pushes their breach of fiduciary duty claim into the realm of the plausible. According to this theory, Defendants chose the Savings Account so that Schwab would pay nominal interest for the privilege of gaining access to tens of millions of dollars in capital. Schwab, in turn, would not charge Defendants for services it rendered to the Pension Plan for which Vituity is the Trustee. This self-dealing theory is utterly speculative and does not make Plaintiffs' breach of the duty of prudence claim with respect to the Savings Account more plausible. That an annual filing does not reflect payments from Vituity to Schwab for administration of the Pension Plan does not, without more support, raise the plausible inference that the Pension Plan was being subsidized by the Plan. Count I is dismissed for failure to state a claim with leave to amend.

### C. Prohibited Transactions

Defendants also move to dismiss Counts II and IV, in which Plaintiffs claim Defendants breached ERISA provisions governing "prohibited transactions" by a fiduciary. *See* 29 U.S.C. § 1106(a)(1)(B) (averments in Count II relating to Savings Account); *id.* §§ 1106(a)(1)(D), 1106(b) (averments in Count IV relating to administrative fees charged by Vituity to the Plan). ERISA

---

[8] Since Plaintiffs' duty of prudence claim relating to the Savings Account selection is insufficiently pleaded, it is unnecessary to address Defendants' additional argument, relying on House Conference Report No. 92-1280, that a fully insured investment is presumptively prudent.

prohibits fiduciaries from engaging in certain types of transactions involving a plan and a party in interest.[9] 29 U.S.C. § 1106(a)(1). Additionally, fiduciaries may not engage in self-dealing transactions. *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996). Where a statutory exemption constitutes an affirmative defense to an alleged ERISA violation, dismissal is appropriate "only if the defense is 'clearly indicated' and 'appear[s] on the face of the pleading.'" *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015) (alteration in original) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)) (declining to find affirmative defense under § 408(e) clearly available from face of complaint), *rev'd on other grounds*, 577 U.S. 308 (2016); *see also Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (collecting cases).

### 1. Count II

In Count II, Plaintiffs aver Defendants violated § 406(a)(1)(B)[10] each time the Plan or Plan participants put money into the Savings Account because these selections constituted the "lending of money or other extension of credit between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(B). Defendants argue this claim amounts to an indictment of how savings accounts work, and that if the arrangement with Schwab amounts to "lending of money" or "extension of credit" to Schwab it would call into question, in the ERISA context, any deposit into a savings account. *See* Dkt. 23, at 19–20. They argue Plaintiffs' reading of those terms is implausible.

Congress enacted § 406 to protect against transactions "likely to injure the pension plan." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)). Plaintiffs' proffered reading of the transactions to which § 406 applies is indeed broad to the extent it means any investment of plan funds in a savings account could constitute a prohibited transaction under § 406(a)(1)(B). The Ninth Circuit

---

[9] It is undisputed Schwab is a party in interest for purposes of Plaintiffs' prohibited transaction causes of action.

[10] Plaintiffs plead, in the alternative, that these transactions violated the other subsections of § 406(a)(1).

1   recently took an expansive view of the transactions to which a different subsection of the statute,

2   § 406(a)(1)(C), applies. *See Bugielski v. AT&T Servs., Inc.*, 76 F.4th 894, 901 (9th Cir. 2023)

3   (interpreting plain text of § 406(a)(1)(C) and rejecting argument that it was "improbable" the

4   statute "would prohibit ubiquitous service transactions" (citation omitted)). It found unpersuasive

5   the suggestion that it should "read additional limitations, requirements, or exceptions into the

6   statutory text." *Id.* Further, whether a prohibited transaction claim is adequately pleaded is a

7   separate question from whether an affirmative defense to that claim exists.

8         The parties in *Bugielski* did not dispute the service transactions at issue fell within the

9   literal meaning of "furnishing of . . . services" in § 406(a)(1)(C). *Id.* Here, on the other hand,

10  Defendants contend Plan and participant investments in the Savings Account cannot reasonably be

11  interpreted to constitute the "lending of money" or "extension of credit" covered by

12  § 406(a)(1)(B). Defendants cite no authority supportive of their specific, restrictive reading of

13  § 406(a)(1)(B). Plaintiffs argue these terms encompass investments in the Savings Account. Given

14  the Ninth Circuit's broad reading of § 406(a)(1)(C) in *Bugielski*, a similarly broad reading of the

15  transactions to which § 406(a)(1)(B) applies is warranted here. Defendants' motion to dismiss

16  Count II is denied.

17        **2. Count IV**

18        In Count IV, Plaintiffs aver Defendants engaged in prohibited transactions by arranging for

19  the Plan to pay Vituity for administrative services Vituity provided pursuant to § 406(a)(1)(D) and

20  § 406(b). Defendants respond that under a statutory exception—§ 408(c)(2)—to § 406(a),

21  fiduciaries are not barred from "receiving any reasonable compensation for services rendered . . .

22  in the performance of [its] duties with the plan." 29 U.S.C. § 1108(c)(2). Defendants also point to

23  Department of Labor regulations in arguing a fiduciary does not violate § 406(b) where it has

24  provided services to a plan and merely seeks reimbursement for those services. *See* 29 C.F.R.

25  § 2550.408b-2(e)(3). Plaintiffs respond that Defendants' invocation of the statutory exemption in

26  § 408(c)(2) and the DOL regulation constitute affirmative defenses they need not defeat in their

27  complaint.

28        ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
    CASE NO. 23-cv-05648-RS

1   Defendants do not directly respond to the contention that Plaintiffs have no obligation to
2   plead around affirmative defenses in their complaint. Instead, they argue Count IV should be
3   dismissed because Plaintiffs did not plead sufficient facts that the fees Vituity charged the Plan
4   were unreasonable in order to state a claim under § 406(a)(1)(D) and, further, did not plead
5   causation or loss to the Plan.[11] Defendants point to no authority that Plaintiffs must establish
6   whether the fees the Plan paid to Vituity were "reasonable" in order to state a § 406(a)(1)(D)
7   prohibited transaction claim. *See Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal.
8   2008) (noting § 406(a) "begins with the premise that virtually all transactions *between a plan and
9   a party in interest* are prohibited"). Whether the fees paid to Vituity were reasonable is more
10  relevant to whether, for instance, the § 408(c)(2) exemption applies. Such an inquiry into the
11  applicability of an affirmative defense is inappropriate for the motion to dismiss stage where
12  Defendants have not otherwise argued an affirmative defense is pleaded on the face of the
13  complaint. *See Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 742–43 (E.D. Cal. 2019)
14  (finding different § 408 affirmative defense not pleaded on face of complaint). Similarly,
15  Defendants raise a potential affirmative defense to Plaintiffs' § 406(b) prohibited transaction
16  allegations when they refer to 29 C.F.R. § 2550.408b-2(e)(3). Plaintiffs adequately state a
17  prohibited transaction claim as to fees the Plan paid Vituity, and Defendants' motion to dismiss
18  Count IV is denied.

### V. CONCLUSION

Defendants' motion to dismiss Plaintiff Nagy under Rule 12(b)(1) for lack of Article III standing is denied. Defendants' Rule 12(b)(6) motion to dismiss is granted as to Plaintiffs' breach of fiduciary duty causes of action relating to the Savings Account (Count I) and payments made to Vituity (Count III). These causes of action are dismissed with leave to amend. Defendants' motion to dismiss is otherwise denied. Plaintiffs are directed to file any amended complaint within 21 days of this order.

---

[11] Defendants' reference to causation and loss is conclusory and offers no basis for dismissal.

1  **IT IS SO ORDERED**.

3  Dated: May 30, 2024

_____
RICHARD SEEBORG
Chief United States District Judge