1  Gregory Y. Porter, *pro hac vice*
   gporter@baileyglasser.com
2  Mark G. Boyko, *pro hac vice*
   mboyko@baileyglasser.com
3  BAILEY & GLASSER LLP
4  1055 Thomas Jefferson Street, NW Suite 540
   Washington, DC 20007
5  Telephone: (202) 463-2101

7  Lisa S. Serebin, Cal. Bar No. 146312
   lisa@creitzserebin.com
8  CREITZ & SEREBIN LLP
   100 Pine Street, Suite 1250
9  San Francisco, CA 94111
   Telephone: (415) 466-3090

11 Attorneys for the Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL E. NAGY and Maria Romero, individually and on behalf of the MedAmerica, Inc. 401(k) Plan,<br><br>Plaintiffs,<br><br>v.<br><br>CEP AMERICA, LLC (d/b/a Vituity), MedAmerica Retirement & Benefits Committee, and Jane and John Does 1–25,<br><br>Defendants. | Case No. 3:23-cv-5648-RS<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Judge:    Hon. Richard Seeborg |

Plaintiffs Daniel E. Nagy and Maria Romero (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Motion for Final Approval of the Parties' Settlement. Plaintiffs seek an Order finally approving the Settlement under Fed. R. Civ. P. 23(e).[1]

## I. INTRODUCTION

Plaintiffs brought this case under ERISA to challenge the decisions the Defendants made concerning the 401(k) Plan offered to its employees (the "Plan"). Plaintiffs alleged: (1) the Company improperly paid itself out of its employees' retirement savings, purportedly for administrative services; (2) the Company allowed Schwab, the Plan's Recordkeeper, to charge additional and excessive fees; (3) the Schwab Bank Savings Account in the Plan produced additional and excessive compensation for Schwab and was imprudent in light of the common alternatives offering higher returns at comparable risk; and (4) Schwab's profits from the Plan were used, in part, to benefit Vituity by offsetting the cost of non-Plan services to the Company. Plaintiffs alleged that Defendants' actions violated their fiduciary duties of prudence and loyalty pursuant to 29 U.S.C. § 1104(a) and constituted prohibited transactions under 29 U.S.C. § 1106(a)(1).

As it stands today, the Company has already stopped paying itself from the Plan for its services and has agreed to a process to remove the Schwab Bank Savings Account. In addition, Defendants are providing a $8.75 million settlement for the Class, nearly 90% of the fees the Plan paid to the Company during the Class Period.

The Settlement is a fair, reasonable, and adequate resolution of the Class's claims. The Settlement, negotiated at arm's length by experienced counsel on both sides and with the help of an experienced mediator, is an excellent result and in the Class Members' best interests.

Lastly, the parties have ensured that the Court's instructions at preliminary approval have been met. Rust was retained as the Settlement Administrator. As described in the attached

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in Part I of the Settlement Agreement.

Declaration of Settlement Administrator ("Rust Decl.") mailed the approved notices and gave notice to the Class consistent with the Court's Order.

## II.     LITIGATION HISTORY

The history of this case is well known to the Court. *See, e.g.,* Plaintiffs' Memorandum in Support of Motion for Preliminary Approval, Dkt. 60. Plaintiffs filed their Complaint on November 1, 2023 (Dkt. 1), and Defendants responded with a motion to dismiss (Dkt. 23) which the Court granted in part and denied in part (Dkt. 41). During the discovery process, the parties engaged a primate mediator and on December 20, 2024 had an all-day mediation session. Dkt 55, ¶ 1

Plaintiffs moved for preliminary approval on March 14, 2025 (Dkt. 59) which the Court granted, following a hearing, on May 23, 2025. Dkt. 68.

## III.     THE SETTLEMENT AGREEMENT

**A.     The Settlement Benefits.**

The Company will pay the Settlement Amount of $8,750,000 in two segments, which along with any interest thereon shall constitute the Settlement Fund. Settlement Agmt. ¶¶ 4.1.1–4.1.2. The Company shall cause the Settlement Fund to be deposited by wire transfer into the Escrow Account. *Id.* ¶ 4.1.2. The Settlement Fund will be used to pay compensation to Class Members; any Case Contribution Awards approved by the Court; all Attorneys' Fees and Expenses approved by the Court; Administrative Costs; and Taxes and Tax-Related Costs. *Id.* ¶ 4.1.10. The Settlement Fund will be distributed to Class Members in accordance with the Plan of Allocation. *Id.* ¶ 4.2.1. The proposed Plan of Allocation is not part of the Settlement Agreement and is to be considered by the Court separately. *Id.* ¶ 4.2.2. Settlement Class Members who have active Plan accounts will receive their distribution directly into their Plan accounts. *Id.* ¶ 4.2.3. Any undistributed funds will be returned to the Plan to defray expenses that would otherwise be charged to the Plan's participants. *Id.* ¶ 4.4.

1    In addition, the Company will not charge the Plan for services provided to the Plan by the

2    Company during the five-year Compliance Period. *Id*. ¶ 3.3. The Company has also committed to

3    a process to removing the Schwab Savings Account and replacing it with a capital preservation

4    fund. *Id*. at 3.2.

**B.    Released Claims.**

Under the Settlement Agreement, the "Released Claims" are those claims against the Defendant Released Parties that: : (i) That would be barred by *res judicata* based on entry of the Final Approval Order; or (ii) That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Settlement Fund to the Plan or any Settlement Class Member in accordance with the Plan of Allocation; or (iii) That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone. The scope of the release shall not include any claims to enforce the Settlement Agreement and shall specifically exclude claims for benefits unrelated to this Settlement that the Releasing Persons may have with respect to the value of their respective vested account balances, per the terms of the Plan and according to the Plan's records. The scope of the release and covenant not to sue shall include, but not be limited to: (i) any affiliates or affiliated companies of the Defendants; (ii) anyone that Plaintiffs could have asserted was a fiduciary as to the Plan; (iii) anyone that Plaintiffs could have asserted was a "party in interest" with respect to the Plan; and (iv) any Defendants' or Defendant Released Parties respective insurers.

The Complaint alleges breaches of ERISA's duties of prudence and loyalty and violations of ERISA's prohibited transaction provisions with respect to the fees paid by the Plan and the selection of Plan investment options. Thus, the release is tied to the claims in the Complaint.

Plaintiffs are not aware of any other cases that will be affected by the settlement.

**C.    Notice to Class Members.**

All Class Members are current or former Plan participants and many are current employees of the Company. Consistent with the Settlement Agreement and Order granting Preliminary Approval, the Company providing Rush, the Settlement Administrator, with the data necessary to

3

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
3:23-CV-5648-RS

comply with the approved notice plan. Rust sent notices by first class to each of the 11,187 Class Members, and additionally emailed 9,335 of those Class Members a notice. Rust Decl. ¶ 11. 401 notices were returned as undeliverable and Rust was able to subsequently determine new addresses for 327 of them, and remailed notices to those Class Members. Rust Decl. ¶ 13.

Accordingly, the notice program reached over 99 percent of the total class, with most class members receiving both mail and email notice. While the Objection Deadline is September 16, 2025, as of the date of this filing, no Class Members have objected to the Settlement. Rust Decl. ¶ 16.

## IV.   THE COURT SHOULD APPROVE THE SETTLEMENT.

As explained in Plaintiffs' Motion for Preliminary Approval, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned . . . . This policy is also evident in the Federal Rules of Civil Procedure . . . which encourage facilitating the settlement of cases." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Pursuant to the modified Federal Rules effective December 1, 2018, this Court previously determined that "it is likely that the Court will be able to grant final approval of the Settlement under FED. R. CIV. P. 23(e)(1)(B) following notice and a hearing." Dkt 68 at ¶ 4. The revised Federal Rule directs courts, in making that evaluation, to evaluate a settlement using the same factors that the Court must ultimately employ to determine whether to grant final approval; namely, "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . and (D) the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2). The adequacy of the proposed relief must be considered in light of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id*.

Nothing has occurred in the time since the Court gave preliminary approval to the Settlement that would call into question the results of the Court's initial evaluation. As set forth below, the Settlement merits final approval.

### A. Plaintiffs and Class Counsel have adequately represented the Class.

The Class representatives and Class Counsel have already been found adequate by this Court at the preliminary approval stage. Dkt. 68, at ¶ 5. Class Counsel have specialized expertise in 401(k) class action litigation, which has allowed them to litigate this complex case efficiently and effectively. Counsel's detailed factual investigation, both before the Complaint was filed and through the discovery process, coupled with their knowledge of applicable ERISA law, also allowed them to negotiate a favorable settlement on behalf of the Class.

### B. The Settlement was negotiated at arm's length.

Prior to discussing settlement, Plaintiffs requested core documents from Defendants and Defendants produced those documents to Plaintiffs. Following Plaintiffs' review and the exchange of a demand and counteroffer, counsel for Plaintiffs and Defendants arranged for a mediation with a JAMS mediator with extensive ERISA experience, Stephen P. Lucke, Esq.. On December 20, 2024, following the exchange of detailed mediation statements and exhibits, the parties conducted the all-day mediation. During the mediation, the Parties engaged in productive discussions and tentatively agreed on a framework that could lead to settlement. On January 17, 2025, the Parties notified the Court and requested an amendment to the Case Management Schedule to allow time for the resolution of the matter. Dkt. 55.

Class Counsel was fully aware of this case's strengths and weaknesses when negotiating the Settlement, which supports the Settlement's preliminary approval. Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Class Counsel have decades of experience prosecuting, settling, and trying ERISA cases on behalf of retirement plan participants, which they used to evaluate and negotiate the Settlement. Dkt. 60-1 at ¶ 7. As the Ninth Circuit observed, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. *Rodriguez*, 563 F.3d at 965; *see also In re*

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). It is Class Counsel's opinion that the proposed Settlement is fair and reasonable, a factor which supports the Settlement's approval.

Because the Settlement was negotiated by experienced counsel with the aid of a mediator, there is a presumption that it was the product of arm's length negotiations. *Satchell v. Fed. Express Corp.*, No. 03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Settlement was also reached after negotiation and fact discovery. Plaintiffs were thus fully informed of the merits and position of their case. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (no basis to disturb settlement in the absence of any evidence suggesting "that the settlement was negotiated in haste or in the absence of information.").

### C.     The relief provided for the Class is adequate.

The Settlement features a monetary payment of $8,750,000. This relief is just under 90% of the fees the Company charged the Plan for its administrative services ($10.0 million) and approximately 32% of the maximum potential damages, when including $13.9 million in allegedly excessive fees to Schwab and $3.1 million in alleged losses related to the Schwab Savings Account. Dkt. 60-1 at ¶ 20. This percentage, in and of itself, is reasonable and warrants preliminary approval. *See, e.g., Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"). *Urakchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15-1614, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018) (granting preliminary approval to settlement of 401k ERISA case that represented between 25.5% of plaintiffs' losses) and Docket Entries 185 and 186 (final approval order and judgment of that settlement).

**D.    The costs, risks, and delay of trial and appeal.**

Here, the litigation would be even more lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Defendants had vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. Before the Parties reached trial, they would have to expend substantial time and effort to brief class certification, brief summary judgment motions, prepare the joint pretrial exhibit list, and litigate any motions *in limine*. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolutions and causing more expense.

Courts have repeatedly recognized that ERISA 401(k) cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, No. 11-2781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). It is not unusual for ERISA fee cases to last for a decade or longer. *See*, *e.g.*, *Tussey v. ABB, Inc.*, No. 06-4305, 2017 WL 6343803, at 3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, No. 07-5359, 2017 WL 3523727, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case filed in 2007). The potential for protracted litigation supports the Settlement's approval.

A certain recovery for the class now far outweighs the mere possibility of future relief after years of costly litigation. Considering the costs, risks, and delay of trial and appeal, the immediate and certain recovery of $8,750,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including summary judgment, trial, post-trial, and post-judgment briefing and appeals—for any judgment to be reduced to actual payments to Plan participants.

**E.    The effectiveness of distribution to the Class.**

No class member will be required to do anything to receive a monetary payment from the Settlement. The Plan maintains detailed records of its current and former participants, which will

enable the Settlement Administrator to deliver notices and distributions with reasonable confidence that the distributions are being sent to the correct people and the correct addresses. If a settlement class member has an active Plan account, their distribution will go directly into their Plan account. Participants who no longer have active Plan accounts will receive checks. Any portion of the settlement fund that cannot be distributed will be returned to the Plan to defray third-party expenses. No funds will revert to Defendants. Additionally, distributions will be done in a way that minimizes or defers tax consequences, thus adding additional value to the Class. To date, nearly every Class Member received notice of the settlement and 22 have requested tax-preferred rollovers. Rust Decl. ¶ 11.

### F. The terms of the proposed attorney's fee award

Class Counsel have separately filing a motion for an award of attorneys' fees of $2,187,500 (25% of the monetary settlement payment) and reimbursement of $13,775.84 in expenses, as well as incentive awards of $10,000 to each of the two Class Representatives. Dkt. 72. As set forth in that Motion, the requested fee is justified in light of the litigation risk assumed by Class Counsel, the time and expense devoted to the litigation, and the results achieved for the Class. Moreover, the Settlement expressly provides that it is not contingent on the Court granting Plaintiffs' request for attorneys' fees in whole or in part. Settlement Agreement § 8.2.2. For purposes of *this* Motion, therefore, nothing in the Settlement's provisions related to attorneys' fees should give the Court any reason to question the fairness of the Settlement itself.

### G. The proposal treats Class Members equitably relative to each other.

As described previously, the settlement treats each Class Member equitably. Damage calculations are based on the Class Member's Plan account balance, which is a fair proxy for the asset-based fees charged by the Company and the Recordkeeper. In addition, the Plan of Allocation doubles the recovery for participants balances in the Savings Account, which is appropriate in light of that claim's strengths and weaknesses.

Finally, the Settlement also does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the claimed losses to their

Plan accounts. While Plaintiffs have also requested incentive awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount. "Incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez*, 563 F.3d at 958). As set forth in Plaintiffs' accompanying Motion for Attorneys' Fees, Expenses and Incentive Awards, the requested incentive awards are appropriate and justified by their work on behalf of the Class.

### V. THE NOTICE

In order to satisfy due process considerations, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Here, the form and method of Notice satisfy all due process considerations and Rule 23(e)(1). The Class Notice describes the lawsuit in plain English, including the terms of the proposed Settlement, the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate, the attorneys' fees and expenses, plus costs, that are being sought, the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing.

The method for distributing the Notice was also designed to reach all Class members, and as discussed above, the Notice in fact reached 99 percent of the Class. *See Mullane*, 339 U.S. at 315 (Holding that a "fundamental requirement of due process [is] . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (citation omitted). Class Members promptly received the Notice either electronically to their designated email address, or in paper form to the (last known) address they provided to the Plan's record keeper. In addition, the Class Notice, the Complaint and various other documents from the case were published on the Settlement Website. Rust Decl. at ¶ 6. Thus, the notice fairly apprised Class Members of the Settlement Agreement and their options with respect thereto, and therefore

fully satisfied due process requirements. *See Newberg on Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33 (5th ed. 2014).

## VI.   CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23. Accordingly, Plaintiffs seek an Order approving the Settlement under FED. R. CIV. P. 23(e).

Dated: August 29, 2025                Respectfully submitted,

/s/ *Mark G. Boyko*
Mark G. Boyko, *pro hac vice*
Gregory Y. Porter, *pro hac vice*
Bailey & Glasser LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
mboyko@baileyglasser.com

Lisa S. Serebin, Cal Bar No. 146312
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Facsimile: (415) 513-4475
lisa@creitzserebin.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 29th day of August, 2025, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system and service upon all participants in this case who are CM/ECF users will be accomplished by operation of that system.

/s/ *Mark G. Boyko*
Mark G. Boyko